**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deana Tuttle, | No. CV-12-01424-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Varian Medical Systems Inc., Medical Plan Administrator; United Healthcare Insurance Company, | |
| Defendants. | |

Pending before the Court is Plaintiff Deana Tuttle's Motion Regarding Standard of Review, (Doc. 23). For the reasons discussed below, the Motion is denied.

**BACKGROUND**

At issue in this case is an employee welfare plan's denial of an employee's claim for the reimbursement of medical payments. The crux of this Motion is to request the Court to apply a non-deferential standard to its review of that denial.

Plaintiff Deana Tuttle is employed by Defendant Varian Medical Systems, Inc. ("Varian") as a Medical Physicist. (Doc. 1 (Compl.) ¶ 8.) As an employee, Ms. Tuttle is a participant in Varian's Welfare Benefit Plan (the "Plan") which is a health and medical reimbursement insurance plan. (*Id.* ¶ 4; Doc. 15 (Ans.) ¶ 4.) Varian is the Plan Sponsor and Defendant United Healthcare Insurance Company ("UHIC") is the insurer of the Plan as well as the claims administrator. (Doc. 1 ¶¶ 5–6; Doc. 15 ¶¶ 5–6.) The Parties dispute whether the Plan delegates to UHIC the discretionary authority to make benefits

determinations. (Doc. 1 ¶ 7; Doc. 15 ¶ 7.)

In July 2009, Ms. Tuttle was diagnosed with breast cancer by the Mayo Clinic of Scottsdale, Arizona (the "Clinic"). (Doc. 1 ¶ 13; Doc. 15 ¶ 13.) She underwent multiple breast cancer surgical procedures at the Clinic on August 4 and 12, 2009. (Doc. 1 ¶ 14; Doc. 15 ¶ 14.)

After the surgeries, Ms. Tuttle's providers at the Clinic billed the Plan for payment of medical expenses related to her treatment from August 4 to 12. (Doc. 1 ¶ 28; Doc. 15 ¶ 28.) Although the Parties agree that the Plan, acting through UHIC, paid expenses, they dispute the percentage of expenses that the Plan paid and what percentage it advised Ms. Tuttle that she must pay. (Doc. 1 ¶ 29–30; Doc. 15 ¶ 29–30.) Ms. Tuttle filed an administrative appeal of the Plan's benefits determination pursuant to the procedure set out in the Plan. (Doc. 1 ¶ 31; Doc. 15 ¶ 31.) The Plan's benefits determination was upheld on appeal on January 12, 2010. (Doc. 1 ¶ 32; Doc. 15 ¶ 32.) A letter describing the decision to Ms. Tuttle advised her of the right to request an independent review of her claim's denial within thirty calendar days. (Doc. 1 ¶ 32; Doc. 15 ¶ 32.)

Based on the Plan's instructions, Ms. Tuttle sent a completed "Health Care Appeal Request Form" to the Plan on February 16, 2010. (Doc. 1 ¶ 35; Doc. 15 ¶ 35.) The Parties dispute whether the Plan acknowledged receipt of the Form and processed it for independent review. (Doc. 1 ¶ 36–37; Doc. 15 ¶¶ 36–37.)

Ms. Tuttle filed an action against Varian in this Court on August 23, 2011. (Doc. 1 ¶ 38; Doc. 15 ¶ 38.) The Parties stipulated to dismiss the action without prejudice to allow the Arizona Department of Insurance (the "Department") to perform an external independent review of Ms. Tuttle's claim; the action was dismissed on November 21. (Doc. 1 ¶ 39; Doc. 15 ¶ 39.) The Department, however, declined to review the matter because the appeal was about the amount of coverage and not whether services were covered under the Plan. (Doc. 1 ¶ 43; Doc. 15 ¶ 43.) As a result of her appeals, Ms. Tuttle has fully exhausted administrative remedies required by the Plan. (Doc. 1 ¶ 44; Doc. 15 ¶ 44.)

During the period in question, the Plan and UHIC acted at least under a structural conflict of interest because UHIC was the insurer and made benefits determinations. (Doc. 1 ¶ 45; Doc. 15 ¶ 45.) That conflict of interest allegedly influenced the Plan's benefits determination regarding Ms. Tuttle's medical expenses. (Doc. 1 ¶ 46.) Ms. Tuttle alleges that she suffered economic damage as a result of Defendants' processing of her claim and that the Plan, acting through UHIC, violated the terms and conditions of the Plan, failed to act on her appeal until she filed suit, and denied her a full and fair review of her claim. (*Id.* ¶¶ 48–52.) She requests Plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs pursuant to *id.* § 1132(g)(1). (*Id.* ¶ 52.) She now moves the Court to determine that a *de novo* standard of review should apply to its review of the Plan's benefits determination.

## DISCUSSION

### I. DETERMINATION OF STANDARD OF REVIEW

The presumptive standard of review of a fiduciary's decision to deny benefits is *de novo*. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (en banc); *see also Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir. 1999). "In adopting the de novo standard, the Supreme Court was guided by principles of trust law because ERISA was enacted to protect employees and the plan administrators have a fiduciary duty to the beneficiaries." *Gonzales v. Unum Life Ins. Co. of Am.*, 861 F. Supp. 2d 1099, 1106 (S.D. Cal. 2012) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). But "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." *Firestone*, 489 U.S. at 111. Therefore, if a plan "unambiguously provide[s] discretion to the administrator," a denial of benefits is reviewed for abuse of discretion. *Abatie,* 458 F.3d at 963.

If a plan confers such discretionary authority, an abuse of discretion standard applies even if the decisionmaker was also the funding source. *Abatie* 458 F.3d at 967. Judicial review in that case, however, is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.*

The plan administrator or fiduciary has the burden of proving the abuse of discretion standard is provided for by the plan documents. *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 994 (9th Cir. 2000).

## II.     PLAN DOCUMENTS

To determine whether the Plan grants discretionary authority, the Court first must determine which documents constitute the Plan. ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and an administrator must act "in accordance with the documents and instruments governing the plan" insofar as they accord with the statute, *id.* § 1104(a)(1)(D). "Each such plan must (1) provide a policy and a method for funding the plan, (2) describe a procedure for plan operation and administration, (3) provide a procedure for amending the plan, and (4) specify a basis for payments to and from the plan." *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441-42 (9th Cir. 1995) (internal quotation marks and citation omitted); 29 U.S.C. § 1102(b).

Ms. Tuttle contends that the administrative record before this Court does not contain the Plan. Defendants dispute that contention and assert that the Plan document is the Policy in the record; it constitutes the written instrument that should control the review of the benefits determination. Ms. Tuttle does not dispute that the Plan is sponsored by Varian and insured by UHIC. The Policy issued by UHIC to Varian and its employees under the Plan consists of the following: (1) the Group Policy; (2) the Schedule of Benefits; (3) the Certificate of Coverage; (4) the Enrolling Group's Application; (5) Riders; and (6) Amendments. (Doc. 22-1 (Admin. Record) at 124.) The Certificate of Coverage states that the Policy "is a legal document between [UHIC] and [Varian] to provide Benefits to Covered Persons, subject to the terms, conditions, exclusions and limitations of the Policy." (*Id.* at 54.) Further, the Policy is defined therein as the "entire agreement" between UHIC and Varian under the Plan. (*Id.* at 124.)

"[I]t is clear that an insurance policy may constitute the "written instrument" of an ERISA plan . . . ." *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (internal

citations omitted); *See Sterio v. HM Life*, 369 F. App'x 801, 803 (9th Cir. 2010) ("We reject [the plaintiff's] contention that the district court should have applied a de novo standard because there is no 'plan' document, only an insurance policy. The insurance policy is the plan document in this case."); *Gonzales*, 861 F. Supp. 2d at 1108 (finding that the ERISA plan at issue was contained, in part, in the group insurance policy). Further, "[a] plan may incorporate other formal or informal documents, such as a collective bargaining agreement or a certificate of insurance." *Gonzales*, 861 F. Supp. 2d 1099, 1107–08 (citing *Richardson v. Pension Plan of Bethlehem Steel Corp.,* 112 F.3d 982, 983 (9th Cir. 1997)). "[T]here is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such." *Horn v. Berdon, Inc. Defined Benefit Pension Plan,* 938 F.2d 125, 127 (9th Cir. 1991).

Ms. Tuttle argues that the Policy is not a Plan document because the Policy refers to other Plan documents that may be obtained from the Plan administrator. For example, the Policy states that a Plan participant may contact the administrator for "assistance in obtaining documents" or "to obtain, . . . copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report . . . and update Summary Plan Description." (Doc. 22-1 at 166, 491) (internal alterations omitted). Those references do not show that the Policy is not the operative Plan document in this matter but demonstrate that there are other documents related to the Plan described in the Policy. "An employee benefit plan under ERISA can be comprised of more than one document." *Gonzales*, 861 F. Supp. 2d at 1107.

Ms. Tuttle also suggests that the Policy is not a Plan document because the Plan existed before the Policy became effective in 2009 and the terms of the Plan were defined before UHIC became the insurer that year. Ms. Tuttle incurred the medical expenses at issue in 2009. The Policy covers any claims for expenses incurred on after January 1, 2009. (Doc. 22-1 at 14.) Further, the Policy states that it "replaces and overrules any previous agreements relating to Benefits for Covered Health Services between [Varian] and [UHIC]." (*Id.* at 5.) The fact that UHIC became the insurer of the Plan in 2009, (see

Doc. 23-2 (2009 Benefits Guide) at 3), does not indicate that the Policy is not a Plan document for purposes of reviewing the denial of Ms. Tuttle's benefits. The Plan is subject to change in any given year and benefits determinations are governed by the terms and conditions in effect during the applicable time period. Based on the administrative record before it, the Court determines that the various sections of the Policy described above are the controlling Plan documents.

The Policy also includes a section entitled "ERISA Statement" with a subheading of "Summary Plan Description." Plan administrators are required to provide Plan participants with summary plan descriptions and with summaries of material modifications "written in a manner calculated to be understood by the average plan participant" that are "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *CIGNA Corp. v. Amara*, ____ U.S. ____, 131 S. Ct. 1866, 1874–75, 179 L. Ed. 2d 843 (2011); 29 U.S.C. §§ 1022(a), 1024(b). The Supreme Court has held that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan . . . ." *CIGNA*, 131 S. Ct. at 1878 (emphasis in original).

Defendants argue that the Statement is not the summary document they are required to furnish to Plan participants under 29 U.S.C. § 1022(a). Instead, they characterize the Statement as a "Rider" to the Policy and as belonging to the set of Plan documents. But the Statement's language and the Policy's terminology indicate otherwise. The Statement is contained within a section of the Policy entitled "Amendments, Riders and Notices (As Applicable)." (Doc. 22-1 at 28.) Only some of the subsections' titles therein include the terms "amendment", "rider", or "notice". The Statement is not one of them; it is not designated as a Rider anywhere in the Policy. Further, the Statement's subheading is "Summary Plan Description" and includes much, but not all, of the information listed in 29 U.S.C. § 1022(b) as required for the mandated summary plan description. The Court finds that the Statement is a Summary Plan

Description and is therefore not a Plan document.

## III. DISCRETIONARY AUTHORITY

### A. Grant of Discretionary Authority in the Policy

The language of the written instrument determines whether discretionary authority was conferred to the plan administrator or fiduciary. *Firestone,* 489 U.S. at 111–12. Therefore, "[t]o assess the applicable standard of review, the starting point is the wording of the plan." *Abatie*, 458 F.3d at 962–63 (internal citation omitted).

Although there are no "magic words" that a plan must include to confer discretion, it must nevertheless clearly indicate that the decision-maker has discretion to grant or deny benefits, or to interpret the plan's terms. *See Feibusch v. Integrated Device Tech., Inc. Emp. Benefit Plan,* 463 F.3d 880, 884 (9th Cir. 2006); *Abatie,* 458 F.3d at 964. The Ninth Circuit has described the level of clarity with which discretion must be conferred in the plan:

> We think it appropriate to insist, . . . that the text of a plan be unambiguous. If an insurance company seeking to sell and administer an ERISA plan wants to have discretion in making claims decisions, it should say so. It is not difficult to write, "The plan administrator has discretionary authority to grant or deny benefits under this plan." When the language of a plan is unambiguous, a company purchasing the plan, and employees evaluating what their employer has purchased on their behalf, can clearly understand the scope of the authority the administrator has reserved for itself. . . . it is easy enough to confer discretion unambiguously if plan sponsors, administrators, or fiduciaries want benefits decisions to be reviewed for abuse of discretion. Where they fail to do so, in this circuit at least, they should expect *de novo* review.

*Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Emps. of Transferred GE Operations*, 244 F.3d 1109, 1113–14 (9th Cir. 2001) (internal quotation marks and citations omitted).

The Policy includes a Certificate of Coverage. In the Certificate is a section entitled "Our Responsibilities" in reference to UHIC's responsibilities under the Plan. It provides the following:

> Determine Benefits
>
> > [UHIC] make[s] administrative decisions regarding whether this Benefit plan will pay for any portion of the cost of a health care service [Plan participants] intend to receive or have received. Our decisions are for payment purposes only. [UHIC does] not make decisions about the kind of care [Plan participants] should or should not receive. [Plan participants] and [their] providers must make those treatment decisions.
>
> > [UHIC has] the discretion to do the following:
>
> > > Interpret Benefits and the other terms, limitations and exclusions set out in this Certificate, the Schedule of Benefits, and any Riders and/or Amendments.
>
> > > Make factual determinations relating to Benefits.

(Doc. 22-1 at 58). Further, a section entitled "General Legal Provisions" in the Policy states

> Interpretation of Benefits
>
> > [UHIC has] the *sole and exclusive discretion* to do all of the following:
>
> > > Interpret Benefits under the Policy.
>
> > > Interpret the other terms, conditions, limitations and exclusions set out in the Policy, including this Certificate, the Schedule of Benefits, and any Riders and/or Amendments.
>
> > > Make factual determinations related to the Policy and its Benefits.
>
> > [UHIC] may delegate this discretionary authority to other persons or entities that provide services in regard to the administration of the Policy.

(*Id.* at 112) (emphasis added).

The Policy's language "unambiguously" grants UHIC discretion "to construe disputed or doubtful terms" in the Plan and determine eligibility for benefits. *See Firestone,* 489 U.S. at 111, 115; *Abatie*, 458 F.3d at 963. Further, the Ninth Circuit has

- 8 -

"repeatedly held that similar plan wording—granting the power to interpret plan terms and to make final benefits determinations—confers discretion on the plan administrator." *Abatie*, 458 F.3d at 963–64; *see, e.g., id.* at 963 (plan provided that "[t]he responsibility for full and final determinations of eligibility for benefits; interpretation of terms; determinations of claims; and appeals of claims denied in whole or in part under the [policy] rests exclusively with [the insurer]") *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1142 (9th Cir. 2002) (plan's terms granted the administrator the "power" and "duty" to "interpret the plan and to resolve ambiguities, inconsistencies and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee"); *Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1159 (9th Cir. 2001) (plan provided that the administrator "has the full, final, conclusive and binding power to construe and interpret the policy under the plan . . . [and] to make claims determinations" grants discretion). Therefore, the Plan confers discretion on UHIC to make benefits determinations.

### B. Fiduciary Status

Ms. Tuttle argues that even if the Policy granted discretionary authority to UHIC, the insurer, it is not a fiduciary under the Plan. The applicable standard of review in an ERISA case is determined based on general trust principles. *Abatie*, 458 F.3d at 963. Therefore, an abuse of discretion standard only applies when a fiduciary to plan participants is the party exercising discretion to make claims decisions. *Id.* If an unauthorized body that does not have fiduciary discretion denies benefits, *de novo* review applies. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) (internal citation omitted).

"Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." *Ariz. State Carpenters Pension Trust Fund v. Citibank, (Ariz.),* 125 F.3d 715, 720 (9th Cir. 1997) (internal citation omitted). ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993) (emphasis

in original and internal citation omitted). Thus, ERISA fiduciaries "include not only those specifically named in the employee benefit plan, 29 U.S.C. § 1102(a), but also any individual who 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,' [*id.*] § 1002(21)(A)(i)." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009).

In support of her argument that UHIC is not a fiduciary, Ms. Tuttle refers to the following provisions in the Policy. (Doc. 23 at 4.) In its introduction letter, the Policy states

> [UHIC] will not be deemed or construed as an employer or plan administrator for any purpose with respect to the administration or provision of benefits under [Varian's] benefit plan. [UHIC is not] responsible for fulfilling any duties or obligations of an employer or plan administrator with respect to [Varian's] benefit plan.

(Doc. 22-1 at 5.) Under the "General Provisions" section, a subsection entitled "ERISA" provides

> When this Policy is purchased by [Varian] to provide benefits under a welfare plan governed by the federal Employee Retirement Income Security Act 29 U.S.C., 1001 et seq., [UHIC] will not be named as, and will not be, the plan administrator or the named fiduciary of the welfare plan, as those terms are used in ERISA.

(*Id.* at 10.) Finally, in sections relating to "continuation coverage," the Policy provides

> [UHIC] will not provide any administrative duties with respect to [Varian's] compliance with federal or state law. All duties of the plan sponsor or plan administrator remain the sole responsibility of [Varian], including but not limited to notification of COBRA and/or state law continuation rights and billing and collection of Premium.
>
> . . . .
>
> [UHIC is not Varian's] designated "plan administrator" as that term is used in federal law, and [UHIC does not] assume any responsibilities of a "plan administrator" according to federal law.

- 10 -

(*Id.* at 10, 93.) Although these provisions state that UHIC is not to be deemed an employer, plan administrator, plan sponsor, or named fiduciary, the Policy does not reject UHIC's role as a fiduciary in all circumstances. An entity may be a fiduciary without formal designation as such. UHIC had the functional role of a fiduciary under the Plan because, as discussed above, the Policy grants UHIC the discretionary authority to grant or deny benefits claims to Plan participants.[1] *See Mertens,* 508 U.S. at 262; *Johnson*, 572 F.3d at 1076.

### C. Delegation of Fiduciary Responsibility

Ms. Tuttle contends that Varian did not properly delegate to UHIC the fiduciary responsibility and consequently, the discretionary authority set out in the Policy.

As discussed above, the Policy unambiguously grants discretionary authority to UHIC, as a fiduciary, to make factual and other determinations related to benefits claims. (*See id.* at 58, 112.) Nevertheless, Ms. Tuttle argues that Varian did not set out procedures in the Policy to confer discretionary authority to an entity and then follow such procedures to confer it on UHIC. That argument misconstrues ERISA's

---

[1] The Court has determined that the "ERISA Statement" is not a Plan document. Nevertheless, the Statement is instructive as to the intent of Defendants to confer discretion on UHIC for benefits determinations. The Statement explains that "[Varian] retains all fiduciary responsibilities with respect to the Plan *except to the extent* [Varian] has *delegated or allocated* to other persons or entities one or more fiduciary responsibility with respect to the Plan." (*Id.* at 167) (emphasis added). The Statement next designates UHIC as the "Claims Fiduciary." (*Id.*) Further below, it states that

> Benefits are paid pursuant to the terms of a group health policy issued and insured by [UHIC]
>
> . . . .
>
> The Plan is administered on behalf of the Plan Administrator by [UHIC] pursuant to the terms of the group Policy. [UHIC] provides administrative services for the Plan including claims processing, claims payment, and handling appeals.

(*Id.*) The Policy states elsewhere that "administrative" services include determinations of "whether this Benefit plan will pay for any portion of the cost of a health care service [Plan participants] intend to receive or have received." (*Id.* at 58.) Thus, the Statement that purports to summarize the Plan is consistent with the finding that under the Plan, UHIC retained fiduciary responsibilities to Plan participants including Ms. Tuttle in matters of claims processing and payment, and related determinations of benefits.

- 11 -

requirements. ERISA states that "[t]he instrument under which a plan is maintained may expressly provide for procedures" for allocating fiduciary responsibilities among named or other fiduciaries.[2] 29 U.S.C. § 1105(c)(1). But the instrument may also allocate fiduciary responsibility as well as discretionary authority *in ipsum documentum. Id.* § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan."). The Policy properly allocated fiduciary responsibility and conferred discretionary authority to UHIC under the Plan.[3]

Ms. Tuttle contends that pursuant to a 2009 Benefits Guide based on the Plan, Varian retained discretionary authority and did not confer it on UHIC.[4] She argues that

---

[2] An example of such language is found in the Policy itself

> [UHIC] may delegate this discretionary authority to other persons or entities that may provide administrative services for this Benefit plan, such as claims processing. The identity of the service providers and the nature of their services may be changed from time to time in our discretion. In order to receive Benefits, [Plan participants] must cooperate with those service providers.

(Doc. 22-1 at 58.)

[3] Ms. Tuttle also argues that authority was not conferred on UHIC because a 2007 policy under the Plan gave discretionary authority only to Varian and did not give Varian the power to delegate it. She refers to relevant provisions in a 2007 Benefit Handbook. She contends that Defendants have not shown that the Plan was thereafter amended pursuant to any disclosed procedures to give Varian the power to delegate that discretionary authority to UHIC in 2009.

Even assuming the Handbook is a valid Plan document, Ms. Tuttle again conflates the two methods for conferring authority on fiduciaries: following procedures set out in the written instrument(s) or conferring it in the written instrument itself. Further, the 2007 policy is not relevant in this matter. When reviewing a denial of benefits, the language of the governing written instrument determines which entity retained authority to interpret the disputed terms of the plan and the power to exercise discretion. *Gonzales*, 861 F. Supp. 2d at 1106 (citing *Firestone,* 489 U.S. at 111–12). In this case, it is the Policy.

[4] The Guide states that

> Varian has the discretionary authority to control and manage the operation and administration of all of the benefit plans and policies. Varian may make whatever rules, interpretations and computations — and take any other actions to administer the plans and policies — that Varian considers appropriate, as long as the company does not abuse its authority. These rules, interpretations, computations and actions of the company will be binding and conclusive on all persons.

- 12 -

because the Guide conflicts with the Policy and it is more favorable to her as a Plan participant, citing to *Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897 (9th Cir. 2004) ("Courts will generally bind ERISA defendants to the more employee-favorable of two conflicting [ERISA plan] documents—even if one is erroneous."), the Guide should be deemed the written instrument for review of UHIC's denial of benefits. Defendants argue that the Guide is not a Plan document since it is an open enrollment guide that describes changes for the relevant enrollment year and provides cost and eligibility information and other resources. The Guide states

> This guide does not constitute a legal commitment to provide benefits or an official summary plan description of [the Plan]. This benefits guide provides an overview of the Varian changes for 2009. The official plan documents and contracts for each plan provide the detailed, legal information about your coverage, and are used to determine how and when benefits are paid.
>
> If there is any discrepancy between the information in this guide and the official plan documents and contracts, the plan documents and contracts will govern.

(Doc. 22-3 (2009 Benefits Guide) at 14.) The Guide gave clear notice to Plan participants that it was not a Plan document. The Court finds that it is not. Therefore, any apparent conflict between the Policy and the Guide is of no consequence in this matter.

### D.   Discretionary Clauses Under California Law

Ms. Tuttle asserts that the grant of discretionary authority to UHIC in the Policy is unlawful because of the California Insurance Commissioner's withdrawal of approval of discretionary clauses in other policies. The Policy states, and Defendants do not dispute, that the Policy is regulated by the California Department of Insurance. (Doc. 22-1 at 3.)

In 2004, the Commissioner published a Notice stating that it was withdrawing its

---

> In addition, Varian reserves the right to amend, modify or terminate any or all of the plans, in whole or in part, at any time and for any reason, at its sole discretion.

(Doc. 22-3 (2009 Benefits Guide) at 14.)

prior approval of policies listed in the Notice because they contained discretionary clauses "that purport to confer on the insurer discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy. Included in this definition are sole discretion clauses, allocation of authority provisions, interpretation of plan provisions and other similar terms." Cal. Dept. of Ins., Notice to Withdraw Approval 1 (Feb. 27, 2004). The Commissioner reasoned that such clauses render insurance contracts "'fraudulent or unsound insurance' within the meaning of [California] Insurance Code § 10291.5" because they make an insurer's promise to pay benefits "contingent on the unfettered discretion of the insurer, thereby nullifying the promise to pay and rendering the contract potentially illusory." *Id.* He also stated that "[i]n the case of . . . disability contracts that are governed by ERISA, the presence of a discretionary clause has the effect of limiting judicial review of a denial of benefits to a review for abuse of discretion" which "deprives California insureds of access to the protections in the Insurance Code and in California law." *Id.* at 2.

The court in *Firestone v. Acuson Corp. Long Term Disability Plan,* 326 F. Supp. 2d 1040 (N.D. Cal. 2004), considered the impact of the Notice on a group disability insurance policy with a discretionary clause that was not listed in the Notice. The court held that the Notice did not apply to the policy even as persuasive authority. *Id.* at 1049–51. It reasoned that when the terms of an insurance policy had been approved by the Commissioner, Section 10291.5 (cited in the Notice) did not provide an insured with the right to "reform the nature of his policy and obtain benefits for which he never bargained by engaging courts to second-guess the Commissioner's approval of the policy." *Id.* at 1050 (quoting *Peterson v. American Life and Health Ins. Co.,* 48 F.3d 404, 410 (9th Cir.), *cert. denied,* 516 U.S. 942 (1995)). "Once the Commissioner has approved a plan, 'an otherwise valid policy is a binding contract and governs the obligations of the parties until the Commissioner revokes his approval.'" *Id.* at 1050 (quoting *Peterson,* 48 F.3d at 410). The court explained that the appropriate remedy to challenge a discretionary clause in a policy that is offensive under Section 10291.5(b) is to "petition a court for a writ of

mandamus requiring that the Commissioner rescind her approval of the plan." *Id.* at 1050.

The Notice is similarly not applicable to the Policy here. The Policy was not listed in the Notice which was published five years earlier. Although Ms. Tuttle seems to contend that the Notice is applicable to policies issued between 2004 and 2012, that is not the case.[5] The Notice withdrew approval of only the listed policies and requested all other California insurers to submit policies containing discretionary clauses as of 2004 for the Commissioner's review. Further, Ms. Tuttle does not argue or show that the Commissioner has rescinded approval of the Policy after its issuance in 2009. She also does not argue that the Policy was never approved by the Commissioner pursuant to California Insurance Code § 10270.9 or that the discretionary clauses are void on public policy grounds in order to avoid their application. *See Horn v. Provident Life & Acc. Ins. Co.*, 351 F. Supp. 2d 954, 964–65 (N.D. Cal. 2004). Therefore, the Notice does not make unlawful the Policy's grant of discretionary authority to UHIC.

## CONCLUSION

The determination of the applicable standard of review in this case depends on whether the Plan granted discretionary authority to the decisionmaker, UHIC, to make benefits decisions. Defendants have shown that the Plan documents, consisting of various sections of the Policy, unambiguously granted such authority to UHIC. They have also shown that the Plan properly delegated that authority to UHIC. Further, Ms. Tuttle has not shown that the discretionary clauses in the Plan were unlawful under California law. Accordingly, the appropriate standard of review is abuse of discretion and not *de novo*.

/ / /

/ / /

---

[5] In 2012, California enacted Insurance Code § 10110.6 making void and unforceable any policy that provides life or disability insurance coverage for any California resident and "contains a provision that reserves discretionary authority to the insurer, . . . to determine eligibility for benefits or coverage, to interpret the terms of the policy, . . . or to provide standards of interpretation or review that are inconsistent with the laws of this state . . . ." The Parties agree that the statute is not applicable to the Policy which was issued in 2009.

**IT IS THEREFORE ORDERED** that Plaintiff Deana Tuttle's Motion Re: Standard of Review, (Doc. 23), is **denied**.

Dated this 24th day of September, 2013.

_____
G. Murray Snow
United States District Judge